**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-10032 |
| Plaintiff-Appellee, | D.C. Nos. 3:19-cr-00404-SI-1 |
| v. | 3:19-cr-00404-SI |
| ALAN SAFAHI, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted February 15, 2024
San Francisco, California

Before: S.R. THOMAS, BEA, and CHRISTEN, Circuit Judges.

Defendant Alan Safahi appeals from his conviction under 18 U.S.C. §§
1344(1), (2) (bank fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1957
(money laundering) and corresponding forty-month prison sentence. We have
jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the judgment of the district

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

court. Because the parties are familiar with the history of the case, we need not recount it here.

I

The evidence presented at trial was sufficient for the district court to find that Safahi acted with intent to defraud. "For a challenge to the sufficiency of the evidence following a bench trial, we review 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018) (quoting *United States v. Atkinson*, 990 F.2d 501, 502–03 (9th Cir. 1993)).

Safahi argues that the district court was required to—but did not—find that Safahi possessed an intent to defraud at the time CardEx signed its contract with Sunrise Banks. The intent to defraud must have existed at the time of the alleged offense. *Evans v. United States*, 153 U.S. 584, 592 (1894); *United States v. French*, 748 F.3d 922, 938 (9th Cir. 2014). Contrary to Safahi's contention, his culpability does not hinge on a false contractual promise of full funding. Here, as the district court properly found, "the fraudulent misrepresentations consisted of *ongoing* misrepresentations, not merely the violation of the contract." Thus, the

district court was required to find only that Safahi possessed an intent to defraud when his scheme to underreport and underfund loads began. The district court made such a finding, and the evidence in the record supports the district court's conclusion.

Safahi also argues that the district court erred by concluding that the contract between CardEx and Sunrise Banks required full funding. "When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable de novo." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985). "When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous." *Id.*

Here, the contract provides that all payments made to Safahi's company shall be transferred to the bank "immediately." The word "immediately" makes clear that CardEx was not permitted to hold on to cardholder payments as one would in a partially funded program. An additional provision states that "Load Amounts coming into the possession of [CardEx] shall be deemed to be held in trust for the Bank." The contract language does not support an interpretation of allowing partial funding.

In its consideration of the extrinsic evidence, the district court did not clearly err in determining that both parties intended the contract to require full funding. The district court's conclusion is amply supported by the record, including testimony from both CardEx and Sunrise Banks representatives.

II

Contrary to Safahi's contention, there was no constructive amendment or material variance from the indictment, an issue we review de novo. *United States v. Bhagat*, 436 F.3d 1140, 1145 (9th Cir. 2006). A constructive amendment occurs "by expanding the conduct for which the defendant could be found guilty beyond [the indictment's] bounds." *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014). Safahi argues that the indictment charged him only with falsely promising to fully fund the cards, and thus the district court's conviction based on Safahi's post-contracting scheme to underreport and underfund loads constructively amended the indictment. But the indictment alleged exactly this post-contract scheme, stating that Safahi "directed employees of Card Express to implement a 'Funding on Demand' initiative," "caused the employees to falsely report to Sunrise Banks [] the total balance of the prepaid cards," "caused Sunrise Banks to believe that the cards Sunrise Banks sponsored had much lower balances overall than in fact they did," and "fraudulently diverted the difference between the two

4

sets of numbers." Safahi was found guilty of the precise conduct charged in the indictment; therefore, no constructive amendment occurred. A material variance involves "a divergence between the allegations set forth in the indictment and the proof offered at trial" that "acts to prejudice the defendant's rights." *Id.* at 1189–90. The evidence offered at trial of a post-contracting scheme to defraud related directly to the charges in the indictment; therefore, there was no material variance.

III

The district court properly denied Safahi's motion to suppress derived from the 2015 search warrant.[1] We review the magistrate's finding of probable cause to issue the warrant for clear error, *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011), and the district court's determination regarding the specificity of the warrant de novo, *United States v. Adjani*, 452 F.3d 1140, 1143 (9th Cir. 2006).

The 2015 warrant authorizing a search of CardEx employees' emails was a valid warrant. Safahi argues that the affidavit filed in support of the warrant was required to establish probable cause of Safahi's intent to defraud at the time the contract was executed. However, as we have discussed, this case does not require

_____

[1] The district court suppressed evidence derived from the 2019 warrant, so we address only the 2015 warrant.

5

proof of intent at the time of contracting because Safahi's culpability hinges on his actions post-dating the execution of the contract. Further, an affidavit need not establish every element of a suspected crime, it need only "present[] a 'fair probability' that evidence of criminal activity will be found in the place to be searched." *United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Here, the extensive twenty-nine-page supporting affidavit described Safahi's fraudulent scheme in detail and explained why evidence was likely to be found in company emails. *See Adjani*, 452 F.3d at 1145–47 (finding probable cause where the affidavit described the scheme in detail and explained the need to search computers).

The language in the affidavit also undermines Safahi's arguments that the emails searched, date range of the search, and categories of evidence to be searched were not sufficiently specific. The affidavit established probable cause to search emails associated with six CardEx employee email accounts (including Safahi's) by explaining that these email addresses were listed on CardEx's application to do business with Sunrise Banks, and Sunrise Banks and other sponsor banks sent and received emails to and from these addresses. The affidavit also justified the date range to be searched of January 1, 2010 to February 26, 2015 by referencing evidence of CardEx's financial troubles giving rise to motive beginning in 2010, as

6

well as to information that CardEx continued to accept payments from clients and that Safahi continued to transfer money from CardEx to his personal bank account late into 2014. Finally, the warrant's Attachment B limited the evidence to be seized to records evincing a particular crime, which is all that is required for warrants to search digital records. *See Flores*, 802 F.3d at 1044–45 & n.21 (affirming the validity of a warrant that allowed the government to search the defendant's Facebook account and seize evidence "tending to show narcotics trafficking").

IV

The district court properly denied Safahi's motion for relief from spoliation. "We review de novo a due process claim involving the government's failure to preserve potentially exculpatory evidence" and "review factual findings, such as the absence of bad faith, for clear error." *United States v. Flyer*, 633 F.3d 911, 915–16 (9th Cir. 2011). Spoliation of evidence constitutes a due process violation only where the defendant shows that the government acted in bad faith. *Id.* at 916. The district court found that there was insufficient evidence to conclude that the government acted in bad faith, and Safahi has not argued that this finding was clearly erroneous. In addition, Safahi had the burden to demonstrate prejudice, *id.*,

and he has offered no support for his contention that the lost emails contained exculpatory evidence.

V

The district court did not abuse its discretion at sentencing in determining the amount of loss. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) (reciting standard of review). Our review is particularly deferential with respect to a district court's loss estimates under the Sentencing Guidelines because the district court "is in a unique position to assess the evidence and estimate the loss." *United States v. Torlai*, 728 F.3d 932, 938 (9th Cir. 2013) (quoting U.S.S.G. § 2B1.1, cmt. n.3(C)). We also can assess whether the explanation for the calculation may be inferred from the record as a whole. *Carty*, 520 F.3d at 992.

Here, the district court made a factual finding that $2,774,953 was "the true scale of CardEx's underfunding." The government argued for a slightly lower figure, $2,735,531, to be determined to be the loss amount at sentencing. Safahi argued that the actual loss amount was less than $1,554,019.48, and contended further discounts should be applied, arguing for a no loss finding. Ultimately, the district court chose a loss amount of slightly under $1.5 million to apply at sentencing. The amount discounted at sentencing from the $2,774,953 loss finding

at trial was to Safahi's benefit because it resulted in a reduction of two offense levels from the loss established at trial.

Although the district court's explanation of the loss calculation could have been more expansive, we will not disturb it if the district court's determination is plausible in light of the entire record. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002). The record in this case could have supported a larger loss determination at sentencing. If there were procedural error in the explanation, it was harmless—especially in light of the reduced offense level determination. *See United States v. Matsumaru*, 244 F.3d 1092, 1107 (9th Cir. 2001); Fed. R. Crim. P. 52(a).

**AFFIRMED.**