STATE OF NEBRASKA, APPELLEE, V. PEDRO D. GARZA, APPELLANT.
592 N.W.2d 485

Filed April 16, 1999.   Nos. S-98-057, S-98-058.

Thomas C. Riley, Douglas County Public Defender, and Marcena M. Hendrix for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Pedro D. Garza, was convicted by a jury of several drug-related offenses, possession of a stolen firearm, use of a firearm to commit a felony, and use of a deadly weapon to commit a felony. Garza appeals, contending that the district court erred in, inter alia, determining that the evidence was sufficient to find Garza guilty of the use of a firearm and use of a weapon counts. We conclude that to sustain a conviction for "use" of a weapon under Neb. Rev. Stat. § 28-1205 (Reissue 1995), the State must show that a defendant actively employed the weapon for the purpose of committing the predicate felony. To sustain a conviction for "possession" of a weapon under § 28-1205, the State must show that the weapon was on one's person or within one's immediate control, which is the area within which one might immediately gain possession of a weapon, during the commission of the predicate felony. The State failed to show that the weapons in the instant case were actively employed by Garza or that they were on his person or within his immediate control during the commission of a felony. Therefore, we vacate Garza's convictions for use of a firearm and use of a deadly weapon to commit a felony, and affirm the judgment in all other respects.

## I. BACKGROUND

### 1. INVESTIGATION

On July 21, 1995, officers of the Omaha Police Division and the Bureau of Alcohol, Tobacco, and Firearms executed a search warrant at 3911 North 55th Street, a residence owned by Garza. Garza was present at the residence during the search.

The officers seized $360, consisting of 13 $20 bills, from Garza's person; a .22-caliber pistol, which was found in a bed-

room closet; and an additional $5,600 in cash. In addition, the officers found a scale; plastic bags, some of which contained trace amounts of methamphetamine; inositol and Fruit Fresh containers; and other miscellaneous items that may be used in drug operations. There was a total weight of approximately 1.2 grams of methamphetamine at the residence.

On May 24, 1996, approximately 10 months later, while Garza was apparently out on bond, officers executed a second search warrant at 8088 Keystone Drive, another residence owned by Garza. Once again, Garza was present during the search. This time, $446 was seized from Garza's person, which consisted of bills in varying denominations, including two $100 bills. The officers also seized a 9-mm handgun, which was found in the bottom of a bedroom dresser drawer and was identified as stolen; five antique rifles; plastic bags containing trace amounts of controlled substances; inositol; and a police scanner. Approximately 13 grams of amphetamine, trace quantities of methamphetamine and cocaine, and a marijuana cigarette were seized from this residence.

An information was filed against Garza on August 16, 1995, in docket 137 page 552, charging Garza with unlawful possession with intent to deliver a controlled substance. This charge was based on the items seized at the North 55th Street residence. Another information was filed against Garza on June 19, 1996, in docket 139 page 725, charging Garza with another count of unlawful possession with intent to deliver a controlled substance. This charge was based on the items seized at the Keystone Drive residence.

On April 14, 1997, the State requested and obtained leave to amend both informations and to consolidate both informations for trial. The amended information in docket 137 page 552 added two counts: *use* of a firearm to commit a felony and possession of a firearm by a felon. The amended information in docket 139 page 725 added five counts: two counts of possession of a controlled substance, one for cocaine and another for methamphetamine; possession of a stolen firearm; *use* of a deadly weapon to commit a felony; and possession of a deadly weapon by a felon. A preliminary hearing was held on the new charges in both amended informations, and the trial court found

that probable cause existed to bind Garza over for trial as to each of the additional counts.

## 2. TRIAL

On direct examination, the prosecution made reference to Garza's alleged status as a prior felon while questioning a police officer as to a certified copy of the judgment and sentence from Garza's alleged prior conviction. The certified copy of the conviction was never received into evidence. On cross-examination of Garza, the prosecution asked whether Garza had been convicted of a felony. Garza denied having been so convicted. The prosecution later attempted to introduce a certified copy of the file, including the judgment and sentence, from Garza's alleged prior conviction. Defense counsel objected to the admission of the file, arguing that although the name of the person who had been previously convicted was the same, there was no proof such as fingerprints or testimony of a handwriting expert that it was the same "Garza" as the defendant. The trial court sustained defense counsel's objection and then determined that there was insufficient evidence to support a jury's finding that Garza was a prior felon. Consequently, the trial court did not submit the possession of a firearm by a felon and possession of a deadly weapon by a felon charges to the jury.

In docket 137 page 552, the jury found Garza guilty of the unlawful possession of a controlled substance (a lesser-included offense of possession with intent to deliver) and use of a firearm to commit a felony. Garza was sentenced to 2 to 4 years' imprisonment as to the unlawful possession of a controlled substance conviction and 2 to 4 years' imprisonment as to the use of a firearm to commit a felony conviction, to be served consecutively. In docket 139 page 725, the jury found Garza guilty of unlawful possession with intent to deliver a controlled substance, possession of a controlled substance, possession of a stolen firearm, and use of a deadly weapon to commit a felony. Garza was sentenced to 2 to 4 years' imprisonment as to the unlawful possession with intent to deliver a controlled substance conviction, 1 to 3 years' imprisonment as to the possession of a controlled substance conviction, 1 to 3 years' imprisonment as to the possession of a stolen firearm conviction, and

3 to 5 years' imprisonment as to the use of a deadly weapon to commit a felony conviction, the first and last sentences to be served consecutively, and the remaining two sentences to be served concurrently.

Garza appeals both judgments to this court. On appeal, docket 137 page 552 became case No. S-98-057 and docket 139 page 725 became case No. S-98-058.

## II. ASSIGNMENTS OF ERROR

Garza asserts that (1) the consolidation of the two separate informations filed against him for a single trial was prejudicial to his rights pursuant to Neb. Rev. Stat. § 29-2002 (Reissue 1995); (2) prosecutorial references made to the jury regarding Garza's unproven status as a felon were unfairly prejudicial; and (3) § 28-1205 requires the active employment of a firearm or deadly weapon in relation to the predicate offense in light of the U.S. Supreme Court ruling in *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995).

## III. SCOPE OF REVIEW

A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997).

Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Torres, ante* p. 380, 590 N.W.2d 184 (1999).

## IV. ANALYSIS

### 1. CONSOLIDATION

There is no constitutional right to a separate trial. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). However, Garza contends that the consolidation of the two separate informations filed against him was prejudicial pursuant to § 29-2002. Section 29-2002 states:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint . . . if the offenses

charged . . . are of the same or similar character or are . . . constituting parts of a common scheme or plan.

(2) The court may order two or more indictments, informations, or complaints . . . to be tried together if the offenses could have been joined in a single indictment, information, or complaint . . . .

(3) If it appears that a defendant . . . would be prejudiced by a joinder of offenses . . . in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

Thus, the propriety of a joint trial involves two questions: whether there were appropriate grounds for consolidation and whether such consolidation would prejudice the defendant. See *State v. Brunzo, supra.*

### (a) Grounds for Consolidation

Clearly, the two informations in the instant case consisted of offenses of the same or similar character. The information in docket 139 page 725 contained charges equivalent to those included in the information in docket 137 page 552. Although the information in docket 139 page 725 did contain three additional charges, those charges were closely related in subject matter, dealing with the possession of controlled substances and the possession of a firearm; the difference was that the controlled substances were not intended to be delivered and that the firearm was stolen. We conclude that there were appropriate grounds for consolidation.

### (b) Prejudice

Having concluded that there were appropriate grounds for consolidation, we must next consider whether the consolidation nonetheless prejudiced the defendant. A defendant opposing joinder of charges has the burden of proving that joinder will be prejudicial to the defendant. *State v. Freeman, supra.* A defendant is not prejudiced by the joinder of charges where the evidence relating to both offenses would be admissible in a trial of either offense separately. *Id.; State v. Thompson*, 231 Neb. 771,

438 N.W.2d 131 (1989). We conclude that the trial court did not abuse its discretion in determining that evidence relating to both offenses would have been admissible in a trial of either offense separately and, thus, that Garza failed to meet his burden of establishing prejudice in the instant case.

## 2. GARZA'S STATUS AS FELON

Garza next argues that the trial court erred in allowing the prosecution to make reference to his alleged status as a prior felon. Garza urges this court to require that to mention a defendant's status as a convicted felon, a motion in limine should first be held outside the presence of the jury. Then the court could determine whether evidence concerning a defendant's alleged status as a felon is admissible prior to its being referenced by the prosecution. The State responds by arguing that the prosecution did not err in attempting to prove Garza was a prior felon, since the State was required to prove as much to convict Garza of the charges of possession of a firearm or a deadly weapon by a felon.

The State is correct in its assertion that evidence of a defendant's prior felony conviction is admissible to prove one of the elements of possession of a firearm or a deadly weapon by a felon. *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994). In the instant case, Garza was charged with two such counts, each of which required the State to establish such. The prosecution made a reference to Garza's status as a prior felon on direct examination of a State witness and asked a question of Garza concerning such status, each of which references amounts to an accusation that Garza had previously been convicted of a felony.

We fail to see how these accusations unfairly prejudiced Garza, when the State was required to prove Garza's status as a felon to convict him of certain charges. In effect, such an accusation and any accompanying prejudice to Garza had already occurred when Garza was charged with possession of a firearm or a deadly weapon by a felon, since, presumably, the jury would have been informed that possession of a firearm or a deadly weapon by a felon was one of the charges it would be asked to decide. Thus, the State's later repetition of the accusa-

tion embodied in the charge was merely a reiteration of a charge that the jury had already heard. We conclude that Garza was not unfairly prejudiced by the State's attempts to prove Garza's alleged status as a prior convicted felon at trial.

### 3. Use or Possession of Deadly Weapon

#### (a) Use of Deadly Weapon

Garza argues that the evidence was insufficient to support his convictions for use of a firearm and use of a deadly weapon to commit a felony. At the outset, we note that Garza's use of a firearm as alleged in docket 137 page 552 occurred on July 21, 1995. Neb. Rev. Stat. § 28-1205 (Reissue 1989) was amended operative September 9, 1995, to provide a harsher penalty for a conviction of use of a firearm than for use of a deadly weapon which is not a firearm. Thus, Garza's conviction for use of a firearm as alleged in docket 137 page 552 was prosecuted under § 28-1205 as it existed prior to the 1995 amendment, whereas his conviction for use of a deadly weapon as alleged in docket 139 page 725, which use allegedly occurred on May 24, 1996, was prosecuted under § 28-1205 as it existed after the 1995 amendment. See § 28-1205 (Reissue 1995). However, because the amendment to § 28-1205 is irrelevant to our analysis in the instant case, we proceed under § 28-1205 as amended.

Garza asserts that under § 28-1205, the term "use" means "active employment," citing *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995). This court has never been asked to interpret § 28-1205 in light of *Bailey v. United States*.

Section 28-1205 states: "Any person who uses a firearm . . . to commit any felony . . . *or* who unlawfully possesses a firearm . . . during the commission of any felony . . . commits the offense of using a deadly weapon to commit a felony." (Emphasis supplied.)

In *Bailey v. United States*, the Court interpreted 18 U.S.C. 924(c)(1) (1994), a federal statute which in relevant part imposed a term of imprisonment upon a person who " 'during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm.' " 516 U.S. at 138. The issue before the Court was whether "evidence of the proximity and

accessibility of a firearm to drugs or drug proceeds is alone suf-
ficient to support a conviction for 'use' of a firearm during and
in relation to a drug trafficking offense" pursuant to § 924(c)(1).
516 U.S. at 138-39.

The Court held that § 924(c)(1) "requires evidence sufficient
to show an *active employment* of the firearm by the defendant,
a use that makes the firearm an operative factor in relation to the
predicate offense." *Bailey v. United States*, 516 U.S. at 143. The
Court noted that the " 'accessibility and proximity' " standard
adopted by the District of Columbia Circuit Court of Appeals,
516 U.S. at 141, would render the term "use" coextensive with
the term "possession," such that nearly every possession by a
person engaged in drug trafficking would satisfy the standard.
The Court determined that the term "'use' must connote more
than mere possession of a firearm by a person who commits a
drug offense." 516 U.S. at 143. According to the Court, had
"Congress intended possession alone to trigger liability under
§ 924(c)(1), it easily could have so provided." 516 U.S. at 413.
In sum, "[a]n evidentiary standard for finding 'use' that is satis-
fied in almost every case by evidence of mere possession does
not adhere to the obvious congressional intent to require more
than possession to trigger the statute's application." 516 U.S. at
144.

Having determined that the term "use" requires more than
mere possession, the Court addressed what the government
must show, beyond mere possession, to establish "use" under
§ 924(c)(1). The Court noted that the plain meaning of the term
"use" implied action and implementation. The Court also noted
that if "Congress had intended to deprive 'use' of its active con-
notations, it could have simply substituted a more appropriate
term—'possession'—to cover the conduct it wished to reach."
516 U.S. at 148. Finally, the Court noted that to interpret "use"
broadly would render the term "carries" superfluous. Therefore,
the Court held that "use" requires that a firearm be actively
employed in a way that makes it an operative factor in the
offense, such as by brandishing, displaying, striking with, or fir-
ing or attempting to fire the firearm.

In the instant case, a plain reading of § 28-1205 clearly indi-
cates that the Legislature intended the term "use" to mean more

than mere possession. Section 28-1205 criminalizes both the "use" of a deadly weapon to commit a felony and the "possession" of a deadly weapon during the commission of a felony. If "use" were interpreted coextensively with "possession," the effect would be to render the term "possession" superfluous. Effect must be given, if possible, to all parts of a penal statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997).

We are persuaded by the Supreme Court's reasoning in *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), and determine it is applicable to § 28-1205. We conclude that "[t]o sustain a conviction under the 'use' prong of [§ 28-1205], the [State] must show that the defendant actively employed," 516 U.S. at 150, a deadly weapon for the purpose of committing a felony, see *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989). The question, then, is whether the evidence in the instant case was sufficient to show that Garza actively employed the seized firearms in his drug operation.

The .22-caliber pistol seized at the North 55th Street residence was located in a box in a bedroom closet. The 9-mm handgun seized at the Keystone Drive residence was located in the bottom of a bedroom dresser drawer, and the antique rifles seized at that residence were found in an upstairs bedroom closet. No evidence of the firearm's active employment was offered by the State.

> [T]he inert presence of a firearm, without more, is not enough to trigger [§ 28-1205]. Perhaps the nonactive nature of this asserted "use" is clearer if a synonym is used: storage. A defendant cannot be charged under [the use prong of § 28-1205] merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.

*Bailey v. United States*, 516 U.S. at 149.

In *U.S. v. Friend*, 101 F.3d 557 (8th Cir. 1996), the police found a handgun with a large quantity of drugs and cash in a secret safe at the home of a person with whom the defendant had conspired. Applying the definition of "use" set forth in

*Bailey v. United States, supra,* the Eighth Circuit Court of Appeals concluded that the fact that this conspiracy stored a weapon with its hoard of drugs and cash was insufficient "use" to support a conviction. *U.S. v. Friend, supra.*

Likewise, in the instant case, the State has shown only that Garza stored weapons at residences where he dealt drugs. Thus, the evidence was insufficient to support Garza's convictions for use of a firearm and use of a deadly weapon under § 28-1205.

### (b) Possession of Deadly Weapon

The State argues that even if Garza could not have been found guilty of the "use" of a weapon under § 28-1205, he could have been found guilty of the "possession" of a weapon under § 28-1205, since Garza had constructive possession of the weapons. The State contends that the term "possession" is defined as including both actual and constructive possession, citing several cases involving the possession of narcotics, including *State v. DeGroat,* 244 Neb. 764, 508 N.W.2d 861 (1993).

Actual possession is synonymous with physical possession. See *State v. Foster,* 196 Neb. 332, 242 N.W.2d 876 (1976). See, also, Black's Law Dictionary 1163 (6th ed. 1990) (stating that actual possession exists where thing is in immediate occupancy and physical control of party). However, constructive possession may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same. *State v. Garcia,* 216 Neb. 769, 345 N.W.2d 826 (1984).

This court has long held that the term "possession," as used in the narcotics context, includes both physical (actual) and constructive possession with knowledge of the presence of a drug and of its character as a narcotic. See, e.g., *State v. Faircloth,* 181 Neb. 333, 148 N.W.2d 187 (1967). However, the fact that this court has interpreted the term "possession" to include both actual and constructive possession in the narcotics context is of little persuasive value in the instant case, which involves the possession of a weapon during the commission of a felony.

It is a fundamental principle of statutory construction that penal statutes are to be strictly construed. *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996). In *Boyd v. Travelers Fire Ins. Co.*, 147 Neb. 237, 22 N.W.2d 700 (1946), we stated that when there is no evidence that the term "possession" is to be applied in any way other than its ordinary sense, it should be given its ordinary meaning. We stated that "[i]n ordinary understanding the term means that a person has possession when he has *physical* control." (Emphasis supplied.) *Id.* at 241, 22 N.W.2d at 702. See, also, *North Platte State Bank v. Production Credit Assn.*, 189 Neb. 44, 200 N.W.2d 1 (1972). Likewise, in *People v. Garcia*, 595 P.2d 228 (Colo. 1979), the court noted that the term "possession" was a common term that should be given its generally accepted meaning as well as the benefit of common-sense understanding. The court stated that the commonsense definition of "possession," as used in a statute prohibiting the possession of a firearm while under the influence of intoxicating liquor or drugs, "is the actual or physical control of a firearm." *Id.* at 231. The State has failed to indicate why § 28-1205, which does not define the term "possession," should be read more broadly than in its ordinary sense.

Moreover, to hold that the term "possession," as used in § 28-1205, includes constructive possession would be manifestly inconsistent with the purpose of § 28-1205. See *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989). In *State v. Ring*, 233 Neb. at 724, 447 N.W.2d at 911, this court stated that the "purposes behind § 28-1205 are to discourage individuals from employing deadly weapons in order to facilitate or effectuate the commission of felonies [the 'use' prong] and to discourage persons from *carrying* deadly weapons while they commit felonies [the 'possession' prong]." (Emphasis supplied.) In *Mack v. State*, 312 A.2d 319 (Del. Super. 1973), the Delaware Superior Court addressed whether the term "possession," as used in a statute prohibiting the possession of a deadly firearm during the commission of a felony, could be construed to include constructive possession. The court held that the general " 'dominion, control, and authority' " (constructive possession) definitions applied in cases involving the possession of drugs and recently stolen goods were inapplicable. *Id.* at 322. See,

also, *Barnett v. State*, 691 A.2d 614 (Del. Super. 1997) (following *Mack v. State, supra*). The court noted that in such cases, the possession of contraband, per se, actual or constructive, is the crux of the matter. However, when it is the possession of a firearm during the commission of a felony that is prohibited, it is the availability of the weapon *under certain circumstances*, i.e., during the commission of a felony, that is at issue.

A penal statute is to be construed in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997). Interpreting the term "possession" in § 28-1205 to mean constructive possession, such as possession in one's home while one is committing a felony, does not serve the purpose of § 28-1205. The purpose of § 28-1205 is to prevent the threat of violence and accompanying danger to human life that is present whenever one has a deadly weapon within one's immediate control during the commission of a felony. See *State v. Rieger*, 26 Wash. App. 321, 613 P.2d 163 (1980) (adopting limited constructive possession standard), *reversed in part on other grounds* 96 Wash. 2d 546, 637 P.2d 236 (1981).

Because defining the term "possession" to include constructive possession would be inconsistent with the plain meaning of possession and the purpose of § 28-1205, we conclude that the term "possession," as used in § 28-1205, includes only actual possession. In this context, we define actual possession as including only those weapons on one's person or within one's immediate control, which is the area within which one might immediately gain possession of a weapon. See, *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (holding that passenger compartment of vehicle is within occupant's immediate control). As the rationale in *Chimel v. California* and *New York v. Belton* indicates, weapons that are not on one's person or within one's immediate control do not present the danger to human life that § 28-1205 seeks to prevent. Thus, for the purpose of determining whether one is in possession of a weapon during the commission of a

felony, we adopt the Fourth Amendment test applied in searches incident to an arrest.

### (c) Sufficiency of Evidence

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998). However, a conviction cannot be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which the accused finds himself or herself, or the mere fact that some unfavorable circumstances are not satisfactorily explained. *State v. Hulshizer*, 245 Neb. 244, 512 N.W.2d 372 (1994). When the evidence adduced at trial is legally insufficient to sustain the conviction, a criminal charge may not be retried, but must be dismissed. *State v. Jimenez*, 248 Neb. 255, 533 N.W.2d 913 (1995).

In the instant case, the .22-caliber pistol was found in a bedroom closet of the North 55th Street house. No controlled substances were found in the closet. No evidence was presented as to whether Garza had actual possession of the firearm at any time while he was in possession of any controlled substances. None of the officers had any idea how long the pistol was at the North 55th Street residence, nor does the evidence indicate how long the controlled substances had been there. Thus, it is pure speculation as to whether the pistol was ever on Garza's person or within his immediate control while Garza had possession of any controlled substances. Accordingly, we conclude that the evidence was insufficient, as a matter of law, to convict Garza of possession of a firearm during the commission of a felony as alleged in docket 137 page 552.

Likewise, there was no evidence that Garza had gone anywhere near the 9-mm handgun or the antique rifles taken from the Keystone Drive residence while Garza had possession of any controlled substances. The weapons were not located near any controlled substances, and there was no evidence as to how long the weapons or the controlled substances had been at the residence. Although Garza had constructive possession of the 9-mm handgun for purposes of his conviction of possession of a stolen firearm, there is no evidence that he ever had actual possession of it while in possession of controlled substances or otherwise. Once again, one must engage in pure speculation to conclude that the weapons at the Keystone Drive residence were on Garza's person or within his immediate control during Garza's commission of a felony. Accordingly, we conclude that the evidence was insufficient, as a matter of law, to convict Garza of possession of a deadly weapon during the commission of a felony as alleged in docket 139 page 725.

## V. CONCLUSION

We conclude that the trial court did not err in consolidating the informations against Garza and in allowing the State to attempt to prove Garza was a prior felon. However, the trial court did err in overruling Garza's motion to dismiss the use or possession of a firearm or a deadly weapon charges due to the insufficiency of the evidence. We vacate Garza's convictions for use of a firearm and use of a deadly weapon to commit a felony. In all other respects, we affirm the judgment.

AFFIRMED IN PART, AND IN PART VACATED.