IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


STATE V. ROWE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

WILLIAM A. ROWE, APPELLANT.


Filed October 10, 2017.    No. A-16-1050.


Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.


INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

William A. Rowe appeals his convictions and sentences in the district court for Sarpy County for attempted robbery, terroristic threats, use of a firearm to commit a felony, and theft by shoplifting. On appeal, he asserts the prosecutor committed misconduct, there was insufficient evidence to support his convictions, and the sentences imposed were excessive. He further assigns several court errors with regard to objections, jury instructions, and motions. For the reasons that follow, we affirm.

## II. BACKGROUND

On October 19, 2015, Rowe was charged by information in the district court for Sarpy County with four criminal counts: Count I, robbery, a Class II felony; Count II, terroristic threats, a Class IV felony; Count III, use of a firearm to commit a felony, a class IC felony; and, Count IV,

aiding and abetting theft by shoplifting, $500 dollars or less. The amended information denotes Count IV is a Class IV felony, when, in actuality it was a Class II misdemeanor, this was corrected at sentencing. The original information was amended to reduce Count I to attempted robbery, a Class IIA felony. Rowe entered pleas of not guilty to all charges.

Trial began on August 9, 2016. Milea Ixta testified that on September 5, 2015, she was smoking methamphetamine with her boyfriend, Rowe. Rowe told her that he needed to get some concrete to complete a project at his mother's home on Jackson Street in Bellevue. Rowe asked Ixta if she would steal the concrete, and she agreed to try. Rowe drove Ixta to Menard's in Ralston in his red Land Rover. Ixta entered the store but was unable to steal the concrete because she could not lift the bags. She looked for something she could shoplift for Rowe to sell to get the money he needed for the concrete. She shoplifted two security cameras.

Ixta returned to Rowe's car and showed him the cameras. He thought he could sell them, but also considered using them in his home. He asked Ixta to steal more cameras and she agreed. After leaving Menard's, Rowe and Ixta drove to a friend's house to buy methamphetamine. Ixta testified that Rowe's shirt rode up as he reached for money and he exposed a handgun tucked into his waistband. Ixta said "I didn't know that you had a gun with you," and Rowe replied, that it was "the .380." Ixta knew Rowe referred to a Kal-Tec .380 automatic handgun because he had shown it to her in the past.

As they drove to the Bellevue Menard's, Rowe and Ixta discussed the plan to enter the store separately. Rowe was going to buy cement while she shoplifted more cameras and then they planned to meet back at the Land Rover. Rowe parked the Land Rover and he and Ixta entered the store. Ixta carried a large purse and walked to the aisle where the security cameras were displayed.

Two loss prevention officers, David Jarvinen and Zach Baxter, monitored various areas of the store on closed circuit TVs in the security office. They observed Ixta remove a security camera from the shelf, and then put it back on the shelf. Then she looked around, removed two security cameras from the shelf, and left the aisle. Her behavior, the large purse, and an empty bag she acquired inside of the store led Jarvinen to suspect Ixta may try to steal the cameras. The cameras were known to be "high theft items," which are expensive and frequently shoplifted.

As Ixta walked to the front of the store, she placed a camera inside the black bag and one in her purse Jarvinen monitored Ixta from the security office while Baxter followed Ixta on foot. Ixta also placed two bags of beef jerky inside the black bag. Ixta pushed a cart containing several items to the cash registers as though she intended to pay for the items. She walked away from the cart without paying and walked toward the exit. Jarvinen called Baxter and told him to wait outside for her.

Baxter positioned himself outside of the exit and waited for Ixta. Baxter walked up to her, identified himself, and asked her to accompany him back into the store to discuss the items she had stolen. Ixta attempted to push past Baxter, who struggled to detain her. Baxter and Jarvinen grabbed Ixta's arms and wrestled her to her knees. They attempted to place her in handcuffs, but she broke free and struck Baxter in the back of the head with the handcuffs.

Ixta began yelling for help. Jarvinen saw a man in a red Land Rover SUV pull up to the door and stop. Ixta told Jarvinen and Baxter that Rowe was her boyfriend and that he had a gun.

Jarvinen instructed Baxter to approach Rowe to try to calm him down. As Baxter walked toward the Land Rover, Rowe exited the driver's side door and walked to the front of the car.

Ixta began yelling at Rowe to "show them the gun." Ixta, Baxter, and Jarvinen testified that Rowe raised his shirt and exposed a black handle tucked into the left side of his waistband for approximately 5 to 10 seconds without saying a word. Upon seeing this, Baxter yelled "gun" and backed away from Rowe. Jarvinen released Ixta and raised his hands in the air. Ixta put the bags on the ground and abandoned the stolen property. She and Rowe entered the Land Rover and fled. Baxter noted the license plate number and called the police.

Both loss prevention officers testified that they are familiar with guns and believed the object in Rowe's waistband to be a gun. Jarvinen testified that he felt unsafe and understood Rowe's action, lifting his shirt to show that he had a gun, to be a threat. At trial, Jarvinen and Baxter identified Rowe as the man who assisted Ixta.

Ixta testified that as they drove away from Menard's Rowe was upset and cussing. He said he needed to go to his mom's house. When they were near his mother's home, they saw a police car parked in front so they drove away. They discarded the methamphetamine they had purchased that day and discussed hiding. Rowe stopped at Gilbert Park in Bellevue to let Ixta out of the car. She ran to a nearby house and hid underneath the porch.

At approximately 5:28 p.m. Officers Justin Pestel and Mike Brazda of the Bellevue Police Department were dispatched to Jackson Street to investigate an intrusion alarm. En route to the house, they received a second dispatch regarding a robbery at Menard's. They learned that the red Land Rover involved in the robbery was registered to a person living at the same address on Jackson Street, and they set up surveillance at the house. Officer Pestel observed the car traveling toward them and attempted to follow it. He momentarily lost sight of the car, but eventually found it parked on a dead end road.

Rowe was ordered from the vehicle and taken into custody. No gun was found on Rowe's person or inside of his vehicle. The two security cameras Ixta took from Menard's in Ralston were found in the back seat of Rowe's car. When officer Brazda questioned Rowe he provided a false name for Ixta and said he had encountered her at a gas station and agreed to give her a ride to Menard's. He said he helped the woman escape from two men who had accosted her at Menard's. Brazda noted that Rowe was "extremely nervous" throughout the contact and appeared to be lying. At trial Pestel and Brazda identified Rowe as the man driving the red Land Rover on September 8, 2015.

Ixta was apprehended by the police and agreed to cooperate with the State. Her agreements were admitted into evidence and contain a provision noting that the State agreed to inform the judge at sentencing of the nature and extent of Ixta's cooperation.

Following the presentation of evidence, a jury instruction conference was held. Rowe objected to multiple jury instructions, which will be discussed in more detail below. Rowe requested an instruction regarding self-defense, defense of others, and choice of evils. The court declined to provide these instructions, finding they were not supported by the evidence.

During closing arguments the prosecutor made several statements which Rowe alleges, on appeal, amounted to prosecutorial misconduct. Toward the end of the initial summation, the prosecutor stated:

Officer Brazda. We talked for about 40 minutes about felony traffic stops. What do felony traffic stops have to do with attempted robbery, shoplifting, terroristic threats, and use of a weapon?

It's called a red herring. It's called look over here. Don't look at the facts of what we're talking about. We spent 45 minutes talking about do you have your gun up? What does it matter how Officer Brazda's assault rifle was carried back to the car and placed in the cruiser?

It doesn't. It's a red herring. Look over here. We're dancing over here. Don't look at the evidence. Don't look at any of it. Don't look at it over here because we are going to talk about a felony traffic stop and what the protocol is, and all that, because it doesn't matter, because it's look over here, not at the evidence.

During his closing argument, Rowe's counsel attacked the credibility of Ixta. He argued that upon seeing Ixta being accosted by two men he lifted his shirt, which may have been a reckless decision, but did not amount to terroristic threat. He argued that he did not know they were loss prevention officers, and he observed Ixta being accosted by two unknown men, as she screamed for help.

On rebuttal, the prosecutor cited several facts corroborating Ixta's testimony and argued that Ixta had no motivation to lie. The prosecutor urged the jury to study the proffer agreements and note that Ixta would be sentenced by the same judge as Rowe. Rowe objected and the court overruled the objection. The prosecutor continued, stating that Ixta admitted to making mistakes, but was there to testify about "what actually happened."

The prosecutor urged the jury to use common sense when evaluating the evidence. The prosecutor referenced the evidence regarding Rowe's use of a firearm and stated, "There is no self-defense instruction because he wasn't doing anything in self-defense." Rowe objected to this statement and moved to strike it. The court sustained the objection and asked the prosecutor to move on. Rowe did not ask the court to provide curative instructions or move for a mistrial at any time during closing arguments.

The case was submitted to the jury, and the jury returned guilty verdicts on each of the four counts. The court accepted the jury's verdicts and adjudged Rowe guilty of the offenses. The court ordered a presentence investigation and scheduled a sentencing hearing.

On August 19, 2016, Rowe filed a motion for new trial. A hearing was held on his motion on September 19. Rowe argued the prosecutor committed misconduct during rebuttal by arguing facts not in evidence, and pointed out that no self-defense instruction would be given. Rowe renewed his objections to the jury instructions and verdict form and challenged the sufficiency of the evidence to support his convictions. The motion was overruled.

A sentencing hearing was held on October 17, 2016. The State advised the court that the shoplifting conviction was a Class II misdemeanor rather than a Class IV felony. Rowe was sentenced to: 1 to 2 years' imprisonment for Count I; 12 months' imprisonment on Count II; 5 to 5 years' imprisonment on Count III; and 1 month imprisonment on Count IV. The district court ordered the sentences imposed on Counts I, II, and IV, to run concurrently with one another, but

consecutively to the sentence imposed in Count III. Rowe received seven days of credit for time served. Rowe timely appeals.

## III. ASSIGNMENTS OF ERROR

Rowe asserts the prosecutor made improper comments during closing argument that deprived him of his right to a fair trial. Rowe asserts that the district court erred by not responding properly to objections during closing statement, not providing appropriate or adequate jury instructions, failing to direct a verdict in his favor, and overruling his motion for new trial. He asserts the evidence was insufficient to support his convictions, and that the sentences imposed were excessive.

## IV. STANDARD OF REVIEW

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, we will review the record only for plain error. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court. *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Martinez*, 295 Neb. 1, 886 N.W.2d 256 (2016).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016).

## V. ANALYSIS

### 1. PROSECUTORIAL MISCONDUCT

Rowe asserts the prosecutor made prejudicial statements during his closing arguments. He concedes that his counsel did not object to the prosecutor's initial closing statement. His counsel did object to two further statements the prosecutor made during rebuttal.

Generally prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *State v. Dubray*, 289 Neb 208, 854 N.W.2d 584 (2014). Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the

prosecutor's remarks were improper. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *Id.* Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id.* A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *State v. Dubray, supra.*

### (a) Objection Based Upon Prosecutorial Misconduct

During the rebuttal portion of the prosecution's closing argument, the State argued that Ixta was credible because she did not deny her history of drug use and criminal activity. The prosecution referred to the proffer agreements which showed that Ixta would be sentenced in front of the same judge and that she agreed to cooperate in Rowe's prosecution in exchange for consideration of the nature and extent of her cooperation when the time came for her sentencing. Rowe asserts the prosecution improperly emphasized Ixta's agreements with the State, arguing that these statements amounted to "improper vouching" because it portrayed the court as a partner in the prosecutorial enterprise. Brief for appellant at 23.

The record shows that Rowe objected to the prosecutor's remarks, and his objection was overruled. However, he did not move for a mistrial. When a party has knowledge during trial of irregularity or misconduct, the party must timely assert his or her right to a mistrial. *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015). Rowe has waived any error resulting from the State's comments due to his failure to move for mistrial based on prosecutorial misconduct.

At another point in the closing statement, the prosecution stated there would be "no self-defense instruction because [Rowe] wasn't doing anything in self-defense." Rowe's counsel said "Judge, I would object to that. Move to strike that." The court replied "All right. Sustained. Move on to your next point." Counsel did not move for a mistrial. Again, we find Rowe has waived any error based upon prosecutorial misconduct which resulted from the State's comment. See *State v. Stricklin, supra*. See, also, *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997). His argument regarding the court's failure to explicitly strike the prosecutor's argument will be addressed in the jury instructions portion of our analysis.

An appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). Plain error exists where there is error, plainly evident from the record but not complained of at trial, that prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Jones*, 293 Neb. 452, 878 N.W.2d 379 (2016). However, because both of these claims of prosecutorial misconduct were raised and considered by the trial court, we cannot find plain error. See *id.* (Where an issue is raised and complained of at trial, it cannot be the basis of a finding of plain error on appeal.)

### (b) No Objection to "Red Herring" Comments

Rowe contends that during the State's initial summation, the prosecutor's repeated use of the term "red herring" was an attack on the personal integrity of Rowe's attorney. He equates these statements to the comments made by the prosecutor in *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006) in which the prosecutor insinuated that all defense lawyers are liars.

The record shows that Rowe's trial counsel did not object to the use of the term "red herring" during closing or move for a mistrial. In order to preserve, as a ground of appeal, an opponent's misconduct during closing argument, the aggrieved party must have objected to improper remarks no later than the conclusion of the argument. *State v. Watt, supra.* Thus, Rowe has waived any complaint about prosecutorial conduct during the initial summation, and we cannot consider the issue unless we find that it constitutes plain error. See *id.*

An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Dubray, supra.* Generally we will find plain error only when a miscarriage of justice would otherwise occur. *Id.*

When a prosecutor's comments result on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. See *State v. Dubray, supra.* These types of comments are a major purpose of summation, and they are distinguishable from attacking a defense counsel's personal character or stating a personal opinion about the character of a defendant or witness. *Id.*

In *State v. Barfield*, the Nebraska Supreme Court found that the evidence was not overwhelming and the credibility of the witnesses was a key factor. Accordingly, it found "'the implication that defense counsel was a liar, and by extension was willing to suborn perjury, was highly prejudicial when viewed in that context.'" See *State v. Nolan*, 292 Neb. 118, 134, 870 N.W.2d 806, 821 (2015) (quoting *State v. Barfield, supra*).

In *State v. Nolan*, the Nebraska Supreme Court stated that a distinction exists between arguing that a defense strategy is intended to distract jurors from what the evidence shows, which is not misconduct, and arguing that a defense counsel is deceitful, which is misconduct. In *State v. Nolan*, prosecutors made statements during closing arguments that the defense counsel would use "smoke screens and mirrors" to pick apart inconsistencies in the testimony of each witness. The Court found that the prosecutor's statements, when read in context, did not assert that defense counsel personally or defense lawyers generally are deceitful, or that it was the job of a prosecutor to mislead the jury. Accordingly, the Court found the remarks were not improper and did not amount to prosecutorial misconduct.

From our review of the record in this case, it appears the prosecutor's use of the term "red herring" did not imply that defense counsel was being deceitful. It was apparently made with the intention of pointing out that some of the subjects on which Rowe's defense counsel focused during trial were not relevant to whether Rowe committed the charged offenses. The prosecutor's comments were similar to the comments in *State v. Nolan, supra*, and, when read in context, the

prosecutor's "red herring" statements did not suggest that defense counsel was deceitful. Therefore we find the remarks were not improper and we need not consider whether the comments prejudiced Rowe's right to a fair trial. Because there was no prosecutorial misconduct and no plain error, we reject this assignment of error.

## 2. ALLEGED COURT ERROR

### (a) Court's Response to Objections During Closing Arguments

#### *(i) First Objection: Improper Vouching*

Rowe asserts but does not argue that the court erred in overruling his objection to the prosecution's statements regarding Ixta's agreement with the State to cooperate in Rowe's prosecution. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Ash, supra*. Because Rowe presents no argument regarding the error he assigns, the issue is not properly presented for appellate review and we do not address it further. *Id*.

In arguing his prosecutorial misconduct claim, he states that "the fact that the jury heard the judge overrule a valid objection was detrimental to the defense." Brief for appellant at 23. Rowe did not properly address the court's ruling on his "valid objection" in his brief and as previously discussed, he waived the issue of prosecutorial misconduct on this basis by failing to move for a mistrial. Without a valid challenge on appeal to the court's ruling on his objection, we cannot find that Rowe was prejudiced by the court's alleged failure.

#### *(ii) Failure to Admonish Jury After Objection During Closing*

Rowe argues that the trial judge "neglected to strike" an improper statement immediately after it was uttered and the objection to the statement was sustained.

As previously discussed, after the prosecutor's remark regarding the absence of a self-defense instruction, Rowe objected and moved to strike. The court replied "All right. Sustained. Move on to your next point." Although it appears that the court's statement was intended to respond to both the objection and the motion to strike, the court did not make a specific direction to strike the comment. Nonetheless, the Nebraska Supreme Court has "long held that a party who fails to insist upon a ruling to a proffered objection waives that objection." *State v. Dean*, 270 Neb. 972, 708 N.W.2d 640 (2006). Rowe allowed the proceedings to continue without insisting upon a clarification by the court or a specific ruling on the motion to strike, thus this argument is waived.

### (b) Jury Instructions

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id.*

*(i) Instruction No. 1*

As previously discussed, Rowe objected to statements made by the prosecution in closing argument with regard to the absence of a self-defense instruction. Instruction No. 1 provided that the attorneys for the parties had a duty to represent their respective interests and to draw legitimate deductions and inferences from the evidence. Further, Instruction No. 16 provided that the statements and arguments of the lawyers for the State and the Defendant were not evidence.

On appeal, Rowe asserts instruction No. 1 was inadequate to cure the prosecutor's remarks because it "did not mention the specific statements of the prosecutor" and was "not given immediately after the damage was done." Brief for appellant at 25. Rowe also asserts the court erred by not providing a curative instruction after his objection was sustained. He concedes that he did not request a curative instruction. The record shows that he did not move for a mistrial, object to Instruction No. 1 because it was not sufficiently specific, or offer a more specific instruction. Nonetheless, he argues the court, sua sponte, "should have given a specific written instruction that the jury disregard the comments." Brief for appellant at 25.

The purpose of the instruction conference is to give the trial court an opportunity to correct any errors made by it. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003). Consequently, a party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions. *Id.* See, also, *State v. Smith*, 19 Neb. App. 708, 811 N.W.2d 720 (2012).

It is the duty of the trial court to instruct the jury on issues presented by the pleadings and supported by the evidence. In applying that principle, the Nebraska Supreme Court has established that the "failure to object to instructions after they have been submitted to counsel for review or to offer more specific instructions if counsel feels the court-tendered instructions are not sufficiently specific will preclude raising an objection on appeal, unless there is a plain error indicative of a probable miscarriage of justice." *State v. Mowell*, 267 Neb. at 93, 672 N.W.2d at 398 (quoting *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999)). Thus, in order to preserve the alleged error, Rowe was required to challenge the instruction and he did not do so, thus this assignment of error is waived.

However, an appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). Upon our review, we find none. This assignment of error is without merit.

*(ii) Instruction No. 3*

At trial, Rowe objected to the elements instruction for attempted robbery, arguing that the court altered the wording of the pattern instruction provided in NJI2d. The district court overruled the objection noting that the instruction set forth all of the elements of the alleged offense in a way that was easier to understand, and the change did not affect the overall meaning of the instruction.

On appeal, Rowe asserts the court erred in giving instruction No. 3 over his objection. He argues the pattern instruction should have been given verbatim so as not to confuse the jury. Rowe did not allege that he was prejudiced, he simply argues "when an approved pattern instruction is available it should be followed. In this case NJI2d. Crim. 4.5 should have been given word for word and line for line so as not to confuse the jury." Brief for appellant at 28.

The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used. *In re Estate of Clinger,* 292 Neb. 237, 872 N.W.2d 37 (2015). However, NJI2d. 4.5 provides definitions for terms used in the robbery statute, Neb. Rev. Stat. § 28-324, it does not provide the elements of robbery.

Section 28-324(1) provides that "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." Instruction No. 3 provided, in part, that "Robbery is committed when a person with the intent to steal takes from the person of another any money or personal property of any value whatever (a) forcibly and by violence, or (b) by putting a person in fear." Although it is not stated in exactly the same way, the court described "robbery" using the same terms used in the statute. The court's instruction did not redefine of the offense of robbery or lessen the State's burden of proof.

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014). When reading all of the jury instructions together, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence. We find that giving instruction No. 3 did not result in prejudicial error necessitating reversal.

### (iii) Instruction No. 8

Rowe objected to jury instruction No. 8, which provides:

> You can only find the Defendant, William A. Rowe, guilty of Count 3 (use of a firearm to commit a felony) if you have found him guilty of either Count 1 (attempted robbery) or Count 2 (terroristic threats). If you have found the Defendant not guilty of both Counts 1 and 2, you cannot find him guilty of Count 3.
>
> As I instructed you in Instruction No. 5, terroristic threats can be committed either intentionally or recklessly. You need not agree unanimously whether the crime of terroristic threats was committed intentionally or recklessly in order to find the Defendant guilty of terroristic threats so long as you unanimously agree that he committed the crime either intentionally or recklessly. However, in order for you to find the Defendant guilty of use of a firearm to commit a felony based on a finding that the Defendant committed the crime of terroristic threats, you must unanimously agree that the crime of terroristic threats was committed intentionally, not recklessly.

Rowe also objected to how instruction No. 8 fit into the verdict form. On appeal, he asserts the last sentence of the instruction was confusing to the jury, and the jury should have been required to "articulate whether the terroristic threat was committed <u>recklessly</u> or <u>intentionally or knowingly</u>." Brief for appellant at 26 (emphasis in original). He asserts the court's failure to properly instruct the jury constituted reversible error because the conviction for "use of a firearm" was contingent upon a finding that he intentionally committed the crime of terroristic threats. Brief for appellant at 26.

The first portion of instruction No. 8 provides that Rowe's conviction for use of a firearm to commit a felony could be based upon either the crime of terroristic threats or the crime of attempted robbery. The jury found Rowe was guilty of attempted robbery, which, in itself is sufficient to support the conviction for use of a firearm to commit a felony. As a result, the jury's determination of Rowe's intent with regard to terroristic threats is inconsequential. Rowe cannot meet his burden of proof to show that he was prejudiced by this alleged error. See *State v. Hinrichsen, supra.*

(c) Failure to Instruct Jury

*(i) Character Evidence Pursuant to § 27-404*

Rowe asserts the court erred by failing to give an instruction to the jury regarding the State's use of character evidence, as defined by Neb. Rev. Stat. § 27-404. After the jury was chosen, but prior to the presentation of evidence, Rowe raised concerns regarding the presentation of evidence under Neb. Rev. Stat. § 27-404 and objected that the State had not put him on notice. Rowe's counsel specifically referred to potential testimony regarding the "alleged shoplifting incident that occurred in Ralston, Nebraska," on September 8, 2015 and "potential drug use on the day in question."

The court noted that the State did not make a "404 motion" and the defense did not file a motion in limine. The issue was raised for the first time, in chambers, on the day before trial. The court advised that Rowe could reassert this objection at trial if any such evidence was presented. The court further stated that there could be no continuing objection on this subject until an objection was made during trial.

Even assuming that evidence to which Rowe refers was presented at trial pursuant to § 27-404, the defense made no objection on this basis during trial and did not request a limiting instruction. The failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Foster*, 286 Neb. 826, 839 N.W.2d 783 (2013). Further, the Nebraska Supreme Court has held that when defense counsel does not request a limiting instruction, the defense waives any error in the failure of the court to give one. See *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). Thus, we find the defense waived this assignment of error.

*(ii) Accomplice Instruction*

Rowe asserts the district court erred by failing to give an accomplice instruction regarding Ixta's testimony, because she was a key witness for the State and the prosecutor vouched for her credibility. Instruction No. 17 states that the members of the jury are the sole judges of the credibility of the witnesses and the factors they may consider in determining the weight to be given to their testimony.

The record does not show that a specific instruction regarding accomplice testimony was made, or that Rowe requested such an instruction. It is not reversible error for a trial court to fail to give a specific instruction on credibility of the testimony of an accomplice where such an instruction is not requested. *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986). This assignment of error is without merit.

(d) Motion for Directed Verdict

Rowe asserts the district court erred in denying his motion for directed verdict because:

> it never stated the following specific language: "In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained."

Brief for appellant at 31. Rowe appears to argue that the court should have recited these exact words at the time the motion for directed verdict was denied. He cites no authority for this assertion, and does not address why the decision of the court was incorrect.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Ash, supra.* Because Rowe presents no argument regarding the error he assigns, the issue is not properly presented for appellate review and we do not address it further. *Id.*

(e) Motion for New Trial

Rowe asserts the statutory procedure was not followed to address his motion for new trial. He argues:

> Under Neb. Rev. Stat. 29-2102(2) "the court shall cause notice of the motion to be served on the prosecuting attorney, grant a hearing on the motion, and determine the issues and make findings of fact and conclusions of law with respect thereto." Since this statutory requirement was not followed the court erred.

Brief for appellant at 32 (emphasis in original).

Rowe made no additional assertions regarding the court's alleged error. The claim is not supported by the evidence which shows a hearing was held on Rowe's motion, both parties were heard, and the court made specific findings, explaining the reasons for overruling Rowe's motion for new trial. Rowe does not present a sufficient argument to support the error he assigned, therefore we decline to address it further. See *State v. Ash, supra.*

3. SUFFICIENCY OF EVIDENCE

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Because Rowe does not challenge the sufficiency of the evidence to support his convictions for aiding and abetting shoplifting and attempted robbery, we will only address the sufficiency of the evidence to support his convictions for terroristic threats and use of a deadly weapon to commit a felony. Pursuant to § 28-1205, a person who uses a firearm, a knife, brass or iron knuckles, or

any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony. By not challenging the sufficiency of the evidence to support his conviction for attempted robbery, he concedes that he committed at least one felony.

Rowe asserts the evidence was insufficient to support his conviction for use of a firearm to commit a felony. He argues that the simple act of lifting a shirt to expose a handgun tucked into a waistband does not constitute "use" within the meaning of Neb. Rev. Stat. § 28-1205 (Reissue 2016). Further, he argues that there was no objective evidence that Rowe "even had a gun." Brief for appellant at 33-34.

The evidence shows that Rowe did not remove a gun from his waistband, and that no gun was found on his person or in his immediate surroundings on September 8, 2015. Even so, multiple witnesses testified that Rowe acknowledged or demonstrated that he was in possession of a gun on that day. Ixta testified that earlier in the day on September 8, she saw the handle of a gun tucked into the waistband of Rowe's pants, and she questioned him about it. She said that he told her it was "the .380," referring to a weapon he had shown her before. Ixta testified that when she was detained by loss prevention officers at Menard's, she yelled for Rowe to "show them the gun," and that he reacted by lifting his shirt to display it. Jarvinen and Baxter testified that they were present for this exchange and that they personally observed as Rowe lifted his shirt to expose the handle of an object tucked into his waistband that appeared to be a gun. They testified that they were familiar with, and personally owned guns, and that they believed what they saw was, in fact, a gun.

The Nebraska Supreme Court has determined that the term "use" requires more than mere possession, for purposes of § 28-1205(1). *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999). In *State v. Garza*, the Nebraska Supreme Court referred to the reasoning of the United States Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), in which the United States Supreme Court held that "use" requires a firearm to be "actively employed in a way that makes it an operative factor in the offense, such as by brandishing, displaying, striking with, or firing or attempting to fire the firearm." *State v. Garza, supra.*

Viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient for any rational trier of fact to have found, beyond a reasonable doubt, that Rowe brandished or displayed the weapon in order to further the robbery attempt, or to scare Jarvinen and Baxter into releasing Ixta so that she could escape. Thus, he could be found to have "used" a weapon to commit a felony.

Rowe also argues that he never said anything to the loss prevention officers and he never pointed anything at them, therefore he could not have committed the crime of terroristic threats. Brief for appellant at 35-36.

Pursuant to § 28-311.01:

(1) A person commits terroristic threats if he or she threatens to commit any crime of violence:

(a) With the intent to terrorize another;

(b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or

(c) In reckless disregard of the risk of causing such terror or evacuation.

For purposes of § 28-311.01, a threat may be written, oral, physical, or any combination thereof. *State v. Curlile*, 11 Neb. App. 52, 642 N.W.2d 517 (2002). Terroristic threats are largely determined by the context of the interaction between the involved people. See *Id.* The evidence shows that after Ixta yelled for Rowe to "show them the gun" he reacted by lifting his shirt, facing in the direction of the loss prevention officers, to display the handle of an object which had been tucked in his waistband. Upon seeing this, Baxter yelled "gun" and backed away from Rowe. Jarvinen released Ixta and raised his hands in the air. Jarvinen testified that he felt unsafe. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of terroristic threats beyond a reasonable doubt.

### 4. EXCESSIVE SENTENCE

Rowe asserts that "at most" he should have been sentenced only for a conviction on Count IV, aiding and abetting theft by shoplifting, and "even that sentence is problematic in that the jury was not provided with a jury form to fix the monetary amount of the shoplifting. Brief for appellant at 36. He asserts the property had no value and the State failed to meet its burden of proof on Count IV. This appears to be additional argument with regard to the jury instructions given and the sufficiency of the evidence to support his conviction. He makes no claims or assertions with regard to the severity of the sentences imposed. An alleged error must be both specifically assigned and specifically argued. See *State v. Ash, supra.* His claim that his sentence is excessive is not properly presented for appellate review and we do not address it further.

To the extent that this portion of his argument asserts the evidence was insufficient to support his conviction on Count IV, we find his argument is without merit. The assertion that the property had no value is not supported by the evidence, as the State presented testimony and exhibits showing that the items had some intrinsic value that translated into nominal market value at the time of the offense. See *State v. Connor*, 16 Neb. App. 871, 754 N.W.2d 774 (2008). This argument is without merit.

### VI. CONCLUSION

Upon our review, we find the comments made by the prosecution during closing argument did not rise to the level of misconduct and we find no plain error which would warrant reversal. We find the court properly instructed the jury, and there was sufficient evidence to support Rowe's convictions. The remainder of Rowe's claims were either waived, without merit, or not properly presented to this court for review. For the foregoing reasons, we affirm Rowe's convictions and sentences.

AFFIRMED.